Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WAYNE R. ANDERSEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2481 | **DATE** | June 27, 2000 |
| **CASE TITLE** | Eric Walker v. Deputy Graham, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The motion to dismiss of defendants Goering and Rompa [32-1] is denied; the motion to dismiss of defendants Farmer et al. to dismiss amended complaint [41-1] is denied. Plaintiff's motions for leave to respond [34-1] and for leave to file a response [57-1] are granted; Plaintiff's motions for leave to file a response to defendants' reply [43-1], for leave to file a motion to show offer of proof [48-1], to show and request offer of proof [50-1] and for leave to file a response to defendants' reply [61-1] are denied. Plaintiff's motion for leave to file a supplemental complaint [49-1] is denied; plaintiff's motion for verbal argument [46-1] is denied as moot. Defendants are directed to answer the amended complaint within thirty days of this order.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 2 8 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 69 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials tta | 00 JUN 27 PM 3:43 | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC WALKER, )
)
    Plaintiff, )
)
v. ) No. 99 C 2481
)
DEPUTY GRAHAM, et al., ) Judge Wayne R. Andersen
)
)
    Defendants. )

**DOCKETED**

**JUN 2 8 2000**

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Eric Walker, currently an inmate at Pontiac Correctional Center, brought this *pro se* civil rights action under 42 U.S.C. §1983 against members of the Bolingbrook, Illinois, Police Department and the Will County Sheriff's Police. Bolingbrook officers Goering and Rompa will be referred to as the "Bolingbrook defendants," and defendants named as Brent T. Graham, James Akers, Dwayne Givens, Deputy Taylor, Deputy Lester [Pamela Lessner], Sergeant Farmer, and Jane Doe are referred to as the "Will County defendants."[1] This Memorandum Opinion and Order addresses the motions to dismiss brought by the two groups of defendants in this case, as well as related motions.

I. **PROCEDURAL HISTORY**

This suit was originally filed February 11, 1999, in the Circuit Court in Will County, Illinois, and was timely removed by the defendants on April 15, 1999, as permitted by 28 U.S.C. §1441 on the basis of this court's general federal question jurisdiction, 28 U.S.C. §1331. Immediately following removal Walker asked for a scheduling order for trial; when this frivolous motion was denied, Walker immediately filed an unauthorized interlocutory appeal. Because Walker is barred from proceeding on appeal in forma pauperis and did not pay the filing fee, the

---

[1] One Will County defendant was named in the complaint as 'Deputy Lester." Counsel for the Will County defendants have filed an appearance on behalf of "Pamela Lessner, incorrectly sued as Deputy Lester."

Court of Appeals dismissed the appeal on August 18, 1999, before considering whether it had jurisdiction.[2]

The Bolingbrook police defendants, Goering and Rompa, filed their motion to dismiss on October 25, 1999. Walker immediately sought and was granted given leave to amend his complaint, and his amended complaint was filed November 16, 1999. After receiving an extension of time to answer, the Will County defendants, Graham, Akers, Lessner, Givens, Taylor and Farmer, filed their motion to dismiss January 7, 2000. The Will County defendants were granted leave to amend their motion to dismiss on February 8, 2000, and Walker was given an opportunity to respond to their new arguments. Both motions are now fully briefed. For the following reasons, both motions are denied.

## II. STANDARD OF REVIEW

Federal notice pleading requires the plaintiff to set out in his complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). A complaint need not spell out every element of a legal theory to provide notice. *See Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998); *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995)(plaintiff may plead conclusions if they give the defendant minimal notice of the claim). Pro se complaints are to be liberally construed. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). The court must take all allegations of the complaint as true, and draw all reasonable inferences from them in the plaintiff's favor. *Id.*

---

[2] Walker has filed many suits in this court while incarcerated in various correctional facilities. Because at least three have been dismissed as frivolous or for failing to state a claim upon which relief may be granted, Walker is now barred by 28 U.S.C. §1915(g) from bringing new actions or appeals in the federal courts unless he is in imminent danger of serious physical injury.

## III. THE ALLEGATIONS OF THE AMENDED COMPLAINT

Walker's amended complaint is verbose and repetitive, and contains unnecessary assertions of legal principles. It does not comply with Rule 10(b), Fed.R.Civ.P., requiring that averments be made in numbered paragraphs. Nevertheless, there can be no reasonable doubt that it provides defendants with adequate notice of a legally sufficient claim. Walker alleges that on May 31, 1997, Bolingbrook defendants Rompa and Goering arrested him for battery at the instance of his stepfather. Walker refused to answer their questions. He heard them say that certain persons at "county" would "kick his ass and make him talk." Walker claims that he felt sick hearing this, and in response to his saying so, he was taken to Edwards Hospital in Naperville, Illinois; an examination showed nothing wrong with him.

Goering and Rompa then took Walker to the booking room of the Will County Adult Detention Facility (Will County Jail). Although Goering and Rompa said Walker was "no problem," defendant Akers recognized Walker and said, "that's the ****** that's suing us!"[3/] Defendant Graham began shouting insults into Walker's ear, and Walker demurred. Walker alleges that Graham slammed Walker to the floor, and Graham and the other Will County defendants beat Walker and injured him. Specifically, Graham allegedly punched Walker in the back of his head while sitting on Walker, dragged him by the ear and choked him; Akers allegedly sprayed Walker with pepper spray and punched Walker in the mouth; and Lester allegedly kicked Walker in the testicles. The Bolingbrook defendants either joined in attacking Walker, or at least did nothing to stop it.

After the defendants were finished with Walker, an unnamed nurse was called; before the nurse arrived Graham and Akers allegedly rendered "assistance" by wetting towels in the toilet and

---

[3/] Walker has filed numerous suits against Will County sheriff's deputies and sheriff's police, including Akers.

3

wiping Walker's face with them.[4/] The nurse treated Walker's eyes and left, saying that she would not "log in the injuries."

Later, Walker alleges that Graham and Akers came by Walker's cell at the Will County Jail and sprayed him with pepper spray through the food hole. Graham then "charged" Walker with aggravated battery and filed a false disciplinary report against him.

It should go without saying that deliberately inflicting pain on a pretrial detainee violates his right under the Due Process Clause of the Fourteenth Amendment not to be punished except upon an adjudication of guilt. *Dorsey v. St. Joseph County Jail Officials*, 98 F.3d 1527 (7th Cir. 1996); *Antonelli*, 81 F.3d at 1427-28; *see Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989). A detainee may be restrained, using appropriate force, when necessary for the security of his confinement or the protection of himself or other inmates, for this is not punishment. He may be punished for his acts of misconduct taking place while in custody, but only in accordance with due process of law. *Rapier v. Harris*, 172 F.3d 999 (7th Cir. 1999). But a detainee may not be beaten because his custodians dislike him, are annoyed with him, or resent being sued by him.

Of course, the complaint may be a complete fabrication, but at this stage the court must take Walker's allegations as true. Allegations of physical abuse in police custody hardly "rise to the level of the irrational or the wholly incredible," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), such that the court need not accept them as true in deciding a motion to dismiss.

## IV. THE WILL COUNTY DEFENDANTS' MOTION TO DISMISS

### A. Misrepresentation

The form furnished by this court to pro se plaintiffs seeking to bring suit under 28 U.S.C. §1983 asks the plaintiff to list each previous lawsuit he has filed. Walker listed several of his previous lawsuits, but not all. The Will County Defendants assert that the complaint should be

---

[4/] Walker alleges elsewhere that the "defendants" left without attempting to give Walker any assistance or medical attention; possibly he means the Bolingbrook defendants. The Federal Rules permit a plaintiff to assert inconsistent claims.

4

dismissed because Walker did not list all of the suits begun by this "ridiculously litigious" plaintiff. Defendants point out that in a previous suit in this court Walker did not list all of his prior suits, and assert that "Mr. Walker's fabrication should no longer be tolerated." Will Cty. Mo. at 3.

Mr. Walker is a prolific litigator, but that in itself has never disqualified a person from suing. The court is not aware that federal law imposes a certain maximum number of lawsuits on citizens, after which they must bear infringement of their rights in silence. Walker did not attempt to mislead the court in any material matter, and the fact that the defendants are understandably tired of dealing with him is not legal grounds to dismiss the complaint.

### B. Motion to Strike under Rule 12(f)

Defendants ask the court to strike portions of the amended complaint because they are redundant and immaterial, citing Rule 12(f), Fed.R.Civ.P., which states:

> Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Defendants' motion was captioned as a motion to dismiss, and asked the court to enter judgment in the defendants' favor, something that cannot be achieved by a Rule 12(f) motion. In any event, while the complaint appears to contain redundant and immaterial matter, a party moving under Rule 12(f), like any other movant, has the burden of persuasion -- in this case the burden of specifically pointing out the offending language so that the other party can, if it wishes, dispute that characterization and the court can rule on the motion. Defendants' open-ended request is like a one-sentence motion to dismiss asserting that the complaint fails to state a claim and asking the court figure out why. What defendants really want is for the court to edit the complaint. That is not the court's job, nor is this the purpose of a Rule 12(f) motion.

### C.  Rule 12(e) Motion For More Definite Statement

Defendants alternatively ask the court to require Walker to provide a more definite statement under Rule 12(e), Fed.R.Civ.P., which states:

5

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Defendants ask that the court strike -- without identifying them -- those allegations that "suggest any unlawful conduct by the Defendants" without "naming a specific time." Defendants have not complied with Rule 12(e), in that they have not pointed to specific allegations of the complaint. As a general proposition, the court disagrees that defendants cannot respond to allegations lacking specific dates. It is acceptable for plaintiffs to allege that something happened "a few days later" or the like, as long as the defendant has notice of the gist of the plaintiff's claim.

The court acknowledges that Walker's allegation of previous "abuse" by the Will County Sheriffs Police is vague. This allegation, however, is nothing but background information. The gist of the complaint is anything but vague: Walker was beaten and physically abused by the defendants on May 31, 1997; he was not given medical treatment; and he was assaulted again in his cell.

If defendants believed that the amended complaint "is so vague or ambiguous that [they] cannot reasonably be required to frame a responsive pleading," they should have brought a motion for more definite statement under Rule 12(e) before responding to the complaint. Citing Rule 12(e) in this hodgepodge motion is inappropriate.

### D. Purported Claims Under 1st, 4th, 5th, and 8th Amendments

The Will County defendants ask the court to dismiss the "allegations" of the amended complaint "concerning violations of the 1st, 4th, 5th, and 8th Amendments" under Rule 12(b)(6). Defendants are technically correct that Walker's constitutional claims arise under the Fourteenth Amendment's Due Process clause. It is customary, however, for both courts and counsel to speak, e.g., of citizens'

6

"First Amendment" rights vis-a-vis state government, even though the First Amendment limits only the national government and is applied to the states via the Fourteenth Amendment.[5]

In any event, Walker's legal characterization of his claims is unimportant. Dismissal is appropriate only if the allegations of the complaint, if true, would not entitle Walker to relief under *any* legal theory. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994)(district court has a duty to consider whether a plaintiffs allegations could provide relief under any available legal theory). Walker is not asserting separate *claims* under the First, Fourth, Fifth and Eighth Amendments, so there is nothing to dismiss.

### E. Official Capacity Claims

The Will County Defendants move the court to dismiss claims against them in their official capacity because Walker has not alleged any official policy of the Will County Sheriff. Again, defendants are correct on a point of law that is irrelevant in the context. An official-capacity claim against any of the Will County defendants would amount to a claim against their employer, Will County, and such a claim can be made only on the basis of some official decision, policy or custom that can be attributed to the County itself. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735-36 (1989); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978); *Eversole v. Steele*, 59 F.3d 710, 714-15 (7th Cir. 1995). Walker has alleged no such policy. As far as the court can see, Walker is suing the defendants solely in their individual capacities. Walker does allege that the defendants were acting in their official capacities when they assaulted him, but in context it is clear that he means no more than that they were acting under color of state law -- that they were in uniform, ostensibly performing their jobs at the time they injured him.

---

[5] Reading the complaint liberally, Walker claims he was abused because he had previously sued some of the present defendants. The First Amendment protects the right to seek redress from the courts, and retaliation for filing suits or grievances can be the basis of a "First Amendment" claim. *See, e.g., Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996).

7

## F. Limitations

Defendants ask that the court "strike any portions of Walker's Complaint that alleged violations occurring before March 3, 1997, because they are time-barred." Defendants refer to the vague allegations of abuse and harassment occurring before Walker's arrest on May 31, 1997. As far as the court can see, Walker is not seeking compensation for these actions in this suit, and these allegations are included only as background information.

## G. Walker's Failure To Pay Fees

The Will County Defendants sought and were granted leave to amend their motion to dismiss. The motion to amend, filed February 9, 2000, asks the court to stay all proceedings in this case until Walker pays the appellate filing fee assessed for his earlier frivolous appeal. They assert that *Sloan v. Lesza,* 181 F.3d 857 (7th Cir. 1999), requires that Walker pay the appellate filing fee "before pursuing any future litigation," including amending his complaint post-appeal.

This argument is frivolous. A prisoner who has "struck out" under 28 U.S.C. §1915(g) "may not bring a civil action or appeal a judgment" in federal court without prepayment. This says nothing about filing papers in an *ongoing* case. The words "further litigation" in *Sloan* clearly refer to new suits or appeals. Defendants, not Walker, brought this suit to federal court. Defendants may not use §1915(g) to prejudice Walker when the suit was properly brought in state court.

## H. Conclusion

The Will County Defendants' motion asks that the complaint be dismissed in its entirety, yet assiduously avoids mentioning Walker's real claims. Walker alleges that defendants in their individual capacities violated his right under the Due Process Clause not to be punished without due process of law by beating him and spraying him with pepper spray for the purpose of inflicting pain upon him. It cannot be contended that this does not state a claim. Walker also alleges that unspecified "staff" denied him medical attention, and this states a claim as well: "Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual

8

punishment." *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Severe pain can be a serious condition to which jailers may not be indifferent, *id.* at 917, particularly if they caused it: "Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise ...." *Id.* The Will County Defendants' motion to dismiss is denied.

## V. THE BOLINGBROOK DEFENDANTS' MOTION TO DISMISS

### A. The Duty to Intervene

The Bolingbrook defendants' motion ignores those portions of the complaint that indicate that they directly participated in the attack on Walker. It appears, however, from Walker's response to their motion, that Walker is actually complaining only that the Bolingbrook defendants failed to intervene to prevent or ameliorate the Will County defendants' assault on him. The Bolingbrook defendants contend that they had no duty to do so.

The Bolingbrook defendants cite *Jackson v. City of Joliet*, 715 F.2d 1200 (7th Cir. 1983), *cert. denied*, 465 U.S. 1049 (1984), and *Jackson v. Byrne*, 738 F.2d 1443 (7th Cir. 1984), for the proposition that failure to provide a particular level of a public service, here police protection, does not amount to a constitutional violation. *Jackson v. City of Joliet* involved a police officer who arrived at the scene of an accident. Finding a car burning, he called the fire department but did not check to see whether there were victims in the burning car. By directing traffic around the burning car, he effectively prevented other passing drivers from attempting a rescue. When firefighters arrived, they noticed occupants in the car, but rather than attempt to assist them they called an ambulance; when the ambulance arrived the occupants were dead. *Jackson v. Byrne* was a suit against the City of Chicago, its police and fire departments, and the firefighters' union. The plaintiffs' decedents' died in a fire during a firefighters' strike in which most Chicago firefighters refused to report to work in violation of a court order. In both cases, the Seventh Circuit held that the Constitution creates no general duty for police or firefighters to aid members of the public, and creates no cause of action based on negligence, or even gross negligence, in the performance of their jobs.

These cases are readily distinguishable. Standing by while Walker was beaten is not the equivalent of failure to respond quickly to a 911 call. While it is settled that negligent deprivations of life, liberty or property by a state official are not violations of the Due Process Clause, *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986), the defendants' alleged conduct, watching Walker being beaten without objecting or attempting to intervene, is deliberate, not negligent.

The Bolingbrook defendants come closer to the mark in citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), and *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). These cases can be considered to stand for the broad proposition that the Fourteenth Amendment's Due Process Clause is a restraint on arbitrary government action, but does not create a positive duty to protect from harm from non-governmental sources. *Collins* held that the Due Process Clause did not require a city to provide reasonably safe working conditions for its workers, and the respondent city's alleged "deliberate indifference" to the safety hazard that took petitioner's life was not an abuse of power that "shocked the conscience" of the Court. *DeShaney* held that social workers who had knowledge that a child was being abused by his father could not be held liable under §1983 for failing to remove him from his father's custody. The Court stated that the Fourteenth Amendment's Due Process Clause limited what the state could do, but did not require action by the state:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.

489 U.S. at 195-96 [citations omitted].

10

While this language seems to support defendants' argument that a police officer can never be liable to a citizen under §1983 for failing to protect him, defendants overlook one critical fact: Walker was being beaten by persons acting under color of state law, and this brings the Fourteenth Amendment into play.

It may be counterintuitive to say that a policeman may look the other way when a citizen is being beaten by a private thug, but must intervene if the thug is known to be another policeman. Nevertheless, a requirement that police officers intervene to prevent constitutional violations by other police officers is entirely consistent with *DeShaney*. If the Fourteenth Amendment forbids the state, in the person of the Will County defendants, from imposing *ad hoc* punishment on Walker, it can impose a corresponding duty upon other state officials to prevent it.[6]

This duty has been recognized for many years. Defendants neglect to mention direct Seventh Circuit precedent holding that a law enforcement officer can be liable under §1983 if he has a reasonable opportunity to prevent other law enforcement officers from infringing a person's constitutional rights and knowingly refuses to do so. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). Whether there was a reasonable opportunity to intervene is a question of fact; taking the allegations of the complaint as true, it states a claim against the Bolingbrook defendants.

The Bolingbrook defendants had relinquished custody of Walker, they had no authority over the Will County defendants, and there was no common authority to which they could appeal. Nevertheless, the Constitution did not permit them to stand by while Walker was beaten. The court cannot assume as a matter of law that there was nothing the Bolingbrook defendants could have done. Even a verbal rebuke might have been effective; recognizing that their conduct was being observed by disapproving witnesses, the Will County defendants might have desisted from their abuse of

---

[6] Although the Will County Sheriff's Police and the Bolingbrook police answer to different political entities, both derive their police powers and authority from the State of Illinois. *See* 65 ILCS 5/11-1-2 (duties and powers of police officers); 55 ILCS 5/3-6001 et seq. (powers and duties of sheriffs).

Walker. Accordingly, the Bolingbrook defendants' motion to dismiss is also denied, and both groups of defendants are directed to answer the complaint within thirty days of this order.

Both of these motions were frivolous, in that a reasonable investigation would have shown that there was absolutely no possibility of their being granted. The Will County defendants made several arguments for dismissal having no basis in law, while ignoring the obvious fact that the complaint stated a claim. The Bolingbrook defendants' counsel overlooked the fact that *DeShaney* does not speak to the duty of state officials not to be deliberately indifferent to deliberate harm inflicted by other state officials. While this mistake might be excusable, ignoring recent and controlling precedent from the Seventh Circuit is not. These motions wasted the court's time and, presumably, their clients' money. The court expects more conscientious representation in the future.

As for the plaintiff, Walker has filed a large number of unnecessary motions. Although Walker is unrepresented by counsel, he has had considerable experience litigating in this court. Walker should know by now that in briefing a motion, there is the motion, a response from the other party, and a reply, and that further argument is not normally permitted. It is unnecessary to ask leave to respond to a motion or reply to an opposing party's response, and the court directs Walker not to file such motions in the future.[2/]

Walker's motion for leave to file a supplemental complaint [49-1] is denied; Walker's failing to list all of his prior suits is immaterial. Walker's motion for "verbal" (i.e., oral) argument [46-1] is denied as moot. Motions unrelated to the motions to dismiss will be addressed in separate orders.

IT IS SO ORDERED.

Wayne R. Andersen, Judge
United States District Court

DATED: June 27, 2000

---

[2/] The court grants Walker's motions for leave to respond [34-1], and for leave to file a response to defendant's motion to amend motion to dismiss [57-1]. The court denies motions for leave to file a response to defendants' reply [43-1], for leave to file a motion to show offer of proof [48-1], to show and request offer of proof [50-1] and for leave to file a response to defendants' reply [61-1].

12